UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

       JEREMY BELLANTI,

          Debtor.

Case No. 08-33895-dof
Chapter 7 Proceeding
Hon. Daniel S. Opperman

_____/

LAND ESCAPE OUTDOOR
MAINTENANCE, LLC, d/b/a
OUTDOOR CREATIONS GROUP

       Plaintiff,

v.

Adv. Pro. No. 09-03004-dof

JEREMY BELLANTI,

       Defendant.

_____/

## OPINION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT

The Court has before it Cross Motions for Summary Judgment. Oral argument regarding each Motion was held on March 14, 2012, and the matters were taken under advisement and held in abeyance pending the outcome of an appeal to the United States District Court of this Court's Order Granting Plaintiff's Motion for Relief from an Order of Dismissal. The Opinion and Final Order of the United States District Court with regard to that appeal were entered on August 8, 2012. A status conference was held on August 28, 2012, at which the parties indicated that the United States District Court decision would be appealed to the Sixth Circuit Court of Appeals. The appeal to the Sixth Circuit Court of Appeals was voluntarily dismissed on November 29,

1

2012. A status conference was held on January 2, 2013, at which the parties reported that the case is ready for a decision on the Cross Motions for Summary Judgment.

<u>JURISDICTION</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334 and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

<u>BACKGROUND</u>

The facts of this case are heavily disputed, with the parties unable to agree even on the underlying relationship between them.

The following facts are undisputed. Land Escape Outdoor Maintenance, LLC ("Plaintiff") is a landscaping company owned by Christopher Yatooma. At all relevant times, Plaintiff was doing business under the name Outdoor Creations Group. The Defendant owned Intex Group, LLC, which is a home improvement contracting company. From 2005 until 2008, the parties worked together on several projects. The parties' statements of fact differ beyond those basic statements.

The Plaintiff alleges the following:

Beginning in approximately 2005, the Plaintiff and the Defendant were partners in a business venture involving paving and decorative stone projects. Under the terms of the partnership, the Plaintiff and the Defendant would work together on various paving projects, with the Plaintiff paying for the cost of labor, materials, equipment, gas, insurance, and any other expenses associated with the project. For his part, the Defendant was responsible for selling, overseeing, and collecting payment for the joint projects. The costs the Plaintiff incurred in funding the projects were supposed to be recouped by the Plaintiff out of payments received from the joint projects. Any profits that were left after the Plaintiff had been reimbursed for all costs were to be shared

2

between the Plaintiff and the Defendant, with the Plaintiff receiving two-thirds of the profit and the Defendant receiving one-third of the profit.

Although there was no formal written agreement outlining the partnership between the Plaintiff and the Defendant, the parties carried on as partners from approximately 2005 until approximately 2008. The Defendant worked with the Plaintiff over the course of several years on various projects. During the time he worked with the Plaintiff, the Defendant wrote checks out of the Plaintiff's bank account, used the Plaintiff's credit card to make purchases, had a business card with his name on it for Outdoor Creations, had an office with furniture in it at the Plaintiff's office, and used Outdoor Creations letterhead in his correspondences. The Defendant authorized Mr. Yatooma to add Land Escape/Outdoor Creations to his builder's license so that Mr. Yatooma would not have to apply for a separate builder's license in order to do work on projects with the Defendant. In fact, the Plaintiff is listed as the company that the Defendant works for on his builder's license.

In addition, the Defendant supervised the projects the parties worked on together, reported payroll to Mr. Yatooma so that the Plaintiff could pay the employees working on the projects, and had authority to make decisions on the quantity of materials needed for each project. The Defendant received draws from the Plaintiff against future commissions, and his wife and bookkeeper, Courtney Bellanti, wrote checks to the Plaintiff for projects the parties had worked on together.

The Plaintiff alleges that, although it always acted in good faith during their partnership by giving the Defendant draws against future commissions and paying for most, if not all, of the labor, materials, and other costs of the parties' joint projects, Defendant used the partnership to defraud it out of over $350,000.00. Specifically, the Plaintiff alleges that it paid $264,507.89 in costs for the projects the parties worked on together, and also paid an additional $160,748.67 in other costs such as liability insurance, maintenance and repairs of machinery, travel expenses, gas reimbursements, equipment loan payment, etc. Furthermore, the Plaintiff alleges that it paid $14,590.61 in indirect costs such as administrative costs, advertising expenses, phone expenses, etc. The Plaintiff alleges that it paid draws to the Defendant in an amount totaling $14,945.00

3

as well.  However, despite paying out a total of $454,792.71 for the parties' joint projects, the Plaintiff alleges that it only received $83,228 in reimbursement for all of the costs it incurred on the projects.  Therefore, the Plaintiff calculates that the Defendant owes it $371,563.41 in costs alone, which does not even take into account the profits to which it was entitled and did not receive.  The Plaintiff's payroll records also make clear that it was paying a significant amount of money in labor for the parties' joint projects.

The Plaintiff alleges that it paid money on no less than seventy-one projects and received no money from those projects, even though the Defendant/Intex did in fact receive payment for those projects.  The Plaintiff argues that such a situation is completely contrary to the partnership agreement it entered into with the Defendant, and clearly shows that the Defendant was in fact committing fraud by embezzling money received from projects and not paying the Plaintiff the money to which it was entitled.

Furthermore, the Plaintiff alleges the Defendant made numerous unauthorized charges on Land Escape's credit card in excess of $10,000.00.  The Plaintiff also alleges that the Defendant wrote several checks to it, apparently to pay it for the projects listed in the memo section of the check, but then voided those checks before the Plaintiff ever received the funds.  The Plaintiff alleges that the Defendant co-mingled funds from different projects, that he would sometimes use an account received from one project to pay creditors from another project, and that he would pay general business expenses out of the same bank account that held the co-mingled funds from the projects with which Intex was involved.

The Defendant alleges the following:

The Plaintiff and the Defendant worked together on many projects, but they did not form a partnership.  The Defendant never agreed to split profits with the Plaintiff and he did not agree to pay for anything other than the cost of the Plaintiff's labor and materials provided on Intex projects.

During the projects on which the Plaintiff and the Defendant worked together, the Defendant used the Plaintiff's work crew and he would provide to Mr. Yatooma the number of hours worked by each employee for payroll purposes.  The Defendant, with

the approval of Mr. Yatooma, would issue checks from the Plaintiff's checking account to pay for materials. The Defendant was also given the Plaintiff's credit card number to occasionally purchase materials for Intex jobs. The rest of the time, the Plaintiff's office personnel would call in the credit card number to the various suppliers. The Plaintiff failed to provide the Defendant with invoices for the materials and labor costs it incurred for the jobs the parties worked together, despite the fact that Ms. Bellanti, Defendant's wife and bookkeeper, consistently asked for invoices. Due to the fact that no invoices were provided, the Defendant was unable to allocate the amounts owed to the Plaintiff on a project by project basis. The Plaintiff would speak with the Defendant or Ms. Bellanti and ask for a specific amount of money as payment for one or more jobs, and Ms. Bellanti would either send a check for that amount or, on occasion, would drive to the Plaintiff's bank to deposit the funds. Ms. Bellanti testified that she expected Mr. Yatooma to account for those payments and apply them to specific jobs. The Defendant asserts that the Plaintiff was cumulatively overpaid for the materials and labor it provided on all of the joint projects.

During the period in which the Plaintiff and the Defendant were working together on Intex projects, the Defendant was helping Mr. Yatooma run his paver division, Outdoor Creations Group. The Defendant did most of the legwork for the paver division, including doing sales, getting quotes, acting as the foreman on those jobs. The Defendant received little to no income for his work with Plaintiff's paver division, but the Defendant hoped that helping Mr. Yatooma would provide him with future business opportunities. While helping Mr. Yatooma, the Defendant was given an office space at the Land Escape offices, which he never used; he was given Outdoor Creations Group letterhead to use; he was permitted to use Land Escape's checking account and credit card to purchase materials for Outdoor Creations Group projects; and he authorized Mr. Yatooma to list Land Escape/Outdoor Creations Group as his employer on his builder's license.

After realizing that no business opportunities would materialize from helping Mr. Yatooma with his paver division and after the relationship between Mr. Yatooma and the Defendant soured, the Defendant hired a number of the Plaintiff's crew members as Intex

5

employees and the Defendant continued Intex business for approximately one year before filing Chapter 7 bankruptcy petitions individually and on behalf of Intex.

ARGUMENTS

In its Motion for Summary Judgment, the Plaintiff argues that it is entitled to summary judgment with regard to its 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6) counts in its Complaint. In his Cross Motion for Summary Judgment, the Defendant argues that he is entitled to summary judgment with regard to all counts in the Plaintiff's Complaint.

DISCUSSION

A. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Federal Rule of Bankruptcy Procedure 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

In cases in which the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999). That both parties simultaneously argue there are no genuine issues of material fact does not in itself establish that a trial is not necessary, and that one party has failed to sustain its burden under Federal Rule of Civil Procedure 56 does not automatically entitle the opposing party to summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2720 (1998).

### B. 11 U.S.C. § 523(a)(2)(A)

Under Section 727 of the Bankruptcy Code, a debtor may obtain a general discharge from all debts that arose before the order for relief. 11 U.S.C. § 727(b). However, there are exceptions for certain obligations, including debts for money obtained by fraud.

11 U.S.C. § 523(a)(2)(A) provides:

(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt –

(2) for money, property,[1] services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

To prevail on a claim under Section 523(a)(2)(A), a plaintiff must show that:

---

[1] The term "property" as used in Section 523(a)(2)(A) "denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process." *Gleason v. Thaw,* 236 U.S. 558 (1915).

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert),*141 F.3d 277, 280 (6th Cir. 1998).

Whether a debtor possessed intent to deceive is measured by a subjective standard. *Id.*

The purpose of Section 523(a)(2) is to prevent debtors from retaining the benefits of property obtained through fraud. *In re Omegas Group, Inc.*, 16 F.3d 1443, 1451 (6th Cir. 1994). Plaintiff must show each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Even so, the court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to debtor. *Rembert,* 141 F.3d at 281.

Intent, under *Rembert*, is measured subjectively. 141 F.3d at 281. A debtor intends to deceive a creditor "when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor." *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001). "Fraudulent intent requires an actual intent to mislead, which is more than mere negligence. . . . A 'dumb but honest' [debtor] does not satisfy the test." *Palmacci v. Umpierrez*, 121 F.3d 781, 788, (1st Cir. 1997) (citations omitted). A debtor's fraudulent intent

> may be inferred from the totality of the circumstances. The bankruptcy court must consider whether the totality of the circumstances' presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.' The court may consider not only the debtor's conduct at the time of the representations, but may consider subsequent conduct, to the extent that it provides an indication of the debtor's state of mind at the time of the actionable representations.

*Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Col. 2002)(quoting *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 652 (10th Cir. BAP 2000)(citations omitted).

As explained by the court in *Haney v. Copeland (In re Copeland)*, 291 B.R. 740 (Bankr.

E.D. Tenn. 2003):

> Proving the Debtor's intent to defraud is similar to proving the Debtor's knowledge and/or recklessness as to the falsity of the representations made.  Because intent is a purely subjective question, the court must examine the totality of the Debtor's actions to determine if she possessed the requisite intent to deceive the Plaintiffs.  Any benefit of the doubt must be resolved in favor of the Debtor, as § 523(a)(2) is strictly construed in her favor.  *XL/Datacomp, Inc. v. Wilson (in re Omegas Group, Inc.*), 16 F.3d 1443, 1452 (6th Cir. 1994).

*Id.* at 760.

In its Motion for Summary Judgment, the Plaintiff argues that (1) when the Plaintiff entered into the partnership agreement with the Defendant, it did so because of the Defendant's representation that it would be reimbursed for all costs and expenses it paid for joint projects and that it would also receive two-thirds of any profit from the projects; (2) the requisite intent to deceive can be inferred from the fact that the Defendant received payment on the projects on which the Plaintiff provided material and labor, yet he failed to turn over payments to the Plaintiff; (3) the Plaintiff justifiably relied on the Defendant's misrepresentations that he would honor the partnership agreement because the Defendant did make some payments to the Plaintiff and it was only after their partnership dissolved that the Plaintiff realized how much money the Defendant had failed to pay; and (4) the Plaintiff's reliance on the Defendant's misrepresentations was the proximate cause of the harm caused to it because the Plaintiff would not have paid for the project costs if it did not believe it would be reimbursed for those costs and also receive a share of the profits from those projects.

In his Response to Plaintiff's Motion for Summary Judgment and in his Cross-Motion for Summary Judgment, the Defendant argues that: (1) the Plaintiff has failed to identify any false statements made by the Defendant to the Plaintiff; (2) the Plaintiff has failed to prove that the

Defendant made any misrepresentations with the requisite intent to deceive the Plaintiff; and (3) the Plaintiff has failed to establish that it relied on any false statement made the Defendant to the Plaintiff to its detriment. The Defendant argues that he never entered into any partnership agreement with the Plaintiff, he never agreed to pay anything more than the costs incurred by the Plaintiff for materials and labor, and he never agreed to pay the Plaintiff any portion of the profits for Intex projects on which Plaintiff provided materials and labor. Moreover, the Defendant argues that he always intended to pay his debt to the Defendant and that he actually did pay more than the amount owed to the Plaintiff for materials and labor.

It is clear that there are material issues of fact remaining with regard to the Section 523(a)(2)(A) count. The facts of this case are so heavily in dispute that the Court cannot so much as determine what the underlying relationship between the parties was, what the underlying agreement between the parties was, which of the Plaintiff's costs would be covered by that agreement and whether the parties agreed that Plaintiff would be entitled to a share of the profits from joint jobs, and what payments were or were not made by the Defendant to the Plaintiff. Accordingly, the Court concludes that summary judgment on behalf of the Plaintiff and the Defendant with regard to the Section 523(a)(2)(A) count is denied.

C.  11 U.S.C. § 523(a)(4) and the Michigan Builders Trust Fund Act

11 U.S.C. § 523(a)(4) excepts from the discharge a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny. In the present case, the Plaintiff alleges that the Defendant owed a fiduciary duty to it under the Michigan Building Contract Fund Act, MCL 570.151 *et. seq.* (commonly referred to as the "Michigan Builders Trust Fund Act" or "MBTFA") and contends that Defendant violated that fiduciary duty by failing to pay for materials and labor the Plaintiff provided to the Defendant for specific construction projects prior

to paying operating and other expenses, making those debts non-dischargeable under Section 523(a)(4).

MBTFA imposes a trust on the funds received by building contractors for the payment of contractors, subcontractors, and materialmen. A contractor doing business in Michigan is prohibited from retaining or using construction payments from a particular project until all laborers, subcontractors, and materialmen have been paid. *People v. Brown*, 610 N.W. 2d 234, 237 (Mich. Ct. App. 2000). The MBTFA provides:

> Sec. 1.  In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.
>
> ***
>
> Sec. 3.  The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment of him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud.

MCL 570.151-153.

A violation of the MBTFA has been held to be equivalent to an act of defalcation while acting in a fiduciary capacity under Section 523(a)(4).

> The effect of this statute is to impose a trust, with the contractor operating as the trustee, upon the funds paid by any person in connection with a building contract. *Huizinga v. United States*, 68 F.3d 139, 144 (6th Cir. 1995).  And from a purely legal standpoint, it is proper to equate a violation of the Michigan Builder's Trust Fund Act to that of an act of defalcation while acting in a fiduciary capacity as applied to § 523(a)(4).

*Behler-Young Co. v. Cousino (In re Cousino)*, 364 B.R. 289, 293 (Bankr. N.D. Ohio 2006) (footnote omitted).

The *prima facie* elements of a civil cause of action brought under the MBTFA include: (1) the defendant is a contractor or subcontractor engaged in the building construction industry, (2) a person paid the contractor or subcontractor for labor or materials provided on the construction project, (3) the defendant retained or used those funds, or any part of those funds, (4) for any purpose other than to first pay laborers, subcontractors, and materialmen, (5) who were engaged by the defendant to perform labor or furnish material for the specific project. *Astro Building Supplies, Inc. v. Slavick (In re Slavik)*, 426 B.R. 711, 716 (Bankr. E.D. Mich. 2010) (citing *DiPonio Constr. Co., Inc. v. Rosati Masonry Co., Inc.*, 631 N.W. 2d 59, 62 (Mich. App. 2001)).

In its Motion for Summary Judgment, the Plaintiff argues that it paid the costs for materials and labor for numerous construction projects; that the Defendant was paid on most, if not all, of those construction projects; and that the Defendant commingled funds from different construction projects and paid Intex's overhead expenses and paid himself profits without first paying the amounts owed to the Plaintiff.

In his Response to Plaintiff's Motion and in his Motion for Summary Judgment, the Defendant argues that (1) the Plaintiff has failed to establish that a trust existed under the MBTFA because the Plaintiff has failed to establish that the relationship between the two parties was one in which the costs of Plaintiff's materials and labor provided on a particular project were to be paid from the funds received on that particular project; (2) the Plaintiff has failed to establish that a trust existed under the MBTFA because the Plaintiff has failed to identify the specific payments that it claims the Defendant received on each project; and (3) the Plaintiff has failed to prove that it was not paid in full for all of the projects on which it provided materials and labor. The Defendant argues that the fact that the Plaintiff refused to issue invoices for

materials and labor provided on specific jobs establishes that their relationship was not one in which the Plaintiff separately accounted for materials and labor provided on a job-by-job basis or allocated payments made by the Defendant to the Plaintiff on a job-by-job basis.

It is clear that there are material issues of fact remaining with regard to the Section 523(a)(4) count. As noted, the facts of this case are so heavily in dispute that the Court cannot so much as determine what the underlying relationship between the parties was, what the underlying agreement between the parties was, which of the Plaintiff's costs would be covered by that agreement and whether the parties agreed that Plaintiff would be entitled to a share of the profits from joint jobs, and what payments were or were not made by the Defendant to the Plaintiff. Despite the fact that the Defendant has admitted that he commingled funds from different projects, which would be considered evidence of intent to defraud under the MBTFA, there are remaining issues of fact regarding whether the relationship between the parties was one that would be covered by the MBTFA to begin with and whether the Defendant paid the Plaintiff for the materials and labor it provided. Accordingly, the Court concludes that summary judgment on behalf of the Plaintiff and the Defendant with regard to the Section 523(a)(4) count is denied.

### D.  11 U.S.C. § 523(a)(6)

Section 523(a)(6) authorizes a bankruptcy court to exclude a debtor from receiving a discharge "from any debt for willful and malicious injury by the debtor to another entity or the property of another entity." The exceptions to discharge are to be narrowly construed in favor of the debtor. *Monsanto Co., v. Trantham (In re Trantham)*, 304 B.R. 298 (B.A.P. 6th Cir. 2004) (citing *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622 (6th Cir. 1999)); *see also Walker v. Tuttle (In re Tuttle)*, 224 B.R. 606, 610 (Bankr. W.D. Mich. 1998) (recognizing "the axiom that

09-03004-dof    Doc 157    Filed 03/08/13    Entered 03/08/13 11:11:10    Page 13 of 23

requires this court to construe exceptions to the bankruptcy discharge narrowly and in favor of the debtor.") (citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)). A party must prove by a preponderance of the evidence that a debtor committed an injury that is both willful <u>and</u> malicious. *Grogan v. Garner*, 498 U.S. 279 (1991).

In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court discussed and determined the meaning of the language used in 11 U.S.C. § 523(a)(6). The issue before the United States Supreme Court involved "whether a debt arising from a medical malpractice judgment attributable to negligent or reckless conduct" fell within 11 U.S.C. § 523(a)(6). *Id.* at 59. The Kawaauhaus argued that the malpractice award fell within the Section 523(a)(6) exception because Dr. Geiger engaged in the intentional act of providing inadequate medical services which led to Mrs. Kawaauhau's injury. *Id.* at 61.

In analyzing the parameters of the language "willful and malicious injury," the United States Supreme Court found that:

> [T]he word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." . . . [T]he (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences of an act,*" not simply "*the act itself.*"

*Id.* at 61-62 (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)).

The United States Supreme Court further determined that to adopt the interpretation proposed by the Kawaauhaus would:

> place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, i.e., neither desired nor in fact anticipated by the debtor. . . . A "knowing breach of contract" could also qualify. A

14

construction so broad would be incompatible with the 'well-known guide that exceptions to discharge "should be confined to those plainly expressed.'

*Id*. at 62 (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)).

More than a year later, the Sixth Circuit Court of Appeals considered the "willful and malicious injury" language contained in Section 523(a)(6), in *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455 (6th Cir. 1999). The Sixth Circuit Court of Appeals interpreted *Geiger* and noted that:

> [t]he [Supreme] Court's citation to the Restatement's definition of "intentional torts" underscores the close relationship between the Restatement's definition of those torts and the definition of "willful and malicious injury." The Restatement defines intentional torts as those motivated by a desire to inflict injury or those substantially certain to result in injury. Although the Supreme Court identified a logical association between intentional torts and the requirements of § 523(a)(6), it neither expressly adopted nor quoted that portion of the Restatement discussing "substantially certain" consequences.

*Id*. at 464.

Based on the language used and analysis of the United States Supreme Court in *Geiger*, the *Markowitz* Court announced the standard of the Sixth Circuit Court of Appeals by holding that:

> unless 'the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a "willful and malicious injury" as defined under § 523(a)(6).

*Id*. (quoting Restatement (Second) of Torts § 8A, at 15 (1964)); *see Kennedy v. Mustaine*, 249 F.3d 576, 580 (6th Cir. 2001).

In addition to proving a willful injury, a party must also prove that the debtor committed a malicious injury. "'Malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citing *Tinker v. Colwell*, 193 U.S. 473, 486 (1904)). If a party fails to

prove either willful or malicious, the debt will be discharged.  *Markowitz*, 190 F.3d at 463.

Inferences can be made, however, if the circumstances surrounding the alleged injury warrant such:

> Determining whether a debtor acted both willfully and maliciously for purposes of § 523(a)(6) requires an examination of that person's state of mind.  A debtor will rarely, if ever, admit to acting in a willful and malicious manner . . . [but] both requirements can be inferred through the circumstances surrounding the [involved] injury.

*O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000) (citations omitted).

In its Motion for Summary Judgment, the Plaintiff argues that the Defendant intended to defraud it and that the debt owed to it is exempt from discharge.  The Plaintiff argues that the following facts are evidence of the Defendant's intent to defraud: (1) the Defendant violated their partnership agreement by failing to pay it for materials, labor, and other costs incurred by it for joint projects and by failing to pay to the Plaintiff its portion of the profits from those projects; (2) the Defendant wrote checks to Land Escape for projects and then voided those checks prior to the Plaintiff receiving the funds therefrom; and (3) the Defendant lied to Mr. Yatooma regarding the costs of and profits from projects in order to induce the Plaintiff into continuing the partnership.

In his Response to Plaintiff's Motion and his Motion for Summary Judgment, the Defendant argues that the Plaintiff has not presented any evidence that the Defendant intentionally caused a willful and malicious injury to the Plaintiff.  The Defendant argues that: (1) the parties never entered into any partnership agreement and he never agreed to pay any portion of the profits from Intex jobs to the Plaintiff or to reimburse the Plaintiff for overhead and administrative expenses; (2) the Defendant overpaid the Plaintiff overall for the costs of

material and labor it provided on Intex jobs; and (3) the voided checks were written to Plaintiff, but were never given to it, and those checks were voided only after the Defendant provided the Plaintiff with checks for larger amounts, which included the payments initially intended to be paid with those voided checks.

It is clear that there are material issues of fact remaining with regard to the Section 523(a)(6) count. As noted, the facts of this case are so heavily in dispute that the Court cannot so much as determine what the underlying relationship between the parties was, what the underlying agreement between the parties was, which of the Plaintiff's costs would be covered by that agreement and whether the parties agreed that Plaintiff would be entitled to a share of the profits from joint jobs, and what payments were or were not made by the Defendant to the Plaintiff. Therefore, on the record before it, the Court is unable to determine whether the Defendant intentionally caused willful and malicious harm to the Plaintiff. Accordingly, the Court concludes that summary judgment on behalf of the Plaintiff and the Defendant with regard to the Section 523(a)(6) count is denied.

### E. Counts under 11 U.S.C. § 727(a)(2)(A), (a)(3), (a)(4), and (a)(5)

In his Motion for Summary Judgment, the Defendant argues that the Plaintiff has failed to allege any evidence to support the Section 727 counts in its complaint. In its Response to Defendant's Motion for Summary Judgment, the Plaintiff cumulatively addressed the Defendant's arguments regarding the Section 727 counts, stating that (1) the Defendant testified under oath at Intex's 341 Meeting of Creditors that Intex was paid in full on all of the projects on which the Plaintiff provided materials and labor, with the exception of two or three projects; and (2) the Defendant failed to pay the Plaintiff what he was owed; and (3) the Defendant listed the Plaintiff as a creditor on his bankruptcy schedules, indicating that he was still indebted to the

Plaintiff. The Plaintiff argues that, because the Defendant was paid in full on almost all of its accounts, he should have been able to pay Plaintiff for at least the costs it incurred on the joint projects. The Plaintiff also argues that the Defendant has inconsistently stated that he paid the Plaintiff in full for the cost of its materials and labor, but yet the Defendant listed the creditor on his schedules as a creditor to whom he owed money.

Section 727(a) of the Bankruptcy Code provides that a debtor is entitled to a discharge unless one or more exceptions are met. Although exceptions to discharge are strictly construed (*See Rembert v. AT & T Universal Card Services, Inc. (In re Rembert),* 141 F.3d 277, 281 (6th Cir.1998)), "a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." *Wazeter v. Michigan National Bank (In re Wazeter),* 209 B.R. 222, 227 (W.D. Mich. 1997). Pursuant to Federal Rule of Bankruptcy Procedure 4005, the burden of proof in objecting to a discharge under Section 727 is on the plaintiff and must be established by a preponderance of the evidence. *Barclays/American Bus. Credit, Inc., v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994).

i. Section 727(a)(2)(A)

Section 727(a)(2)(A) provides that the court shall grant the debtor a discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody or property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed ... property of the debtor, within one year before the date of the filing of the petition."

The Plaintiff has failed, in its Complaint and in its Response to the Defendant's Motion for Summary Judgment, to specifically identify any property of the debtor that Defendant has transferred, removed, destroyed, mutilated, or concealed within one year prior to the petition

date. The Plaintiff failed to substantively respond to the Defendant's Motion for Summary Judgment and merely alleges that the Defendant was paid on most of the projects on which the Plaintiff provided materials and labor, but that the Plaintiff was not paid for its material and labor on some of those projects. That allegation is not enough to support a claim under Section 727(a)(2)(A) and, therefore, the Defendant's Motion for Summary Judgment is granted with regard to that count.

ii. Section 727(a)(3)

Section 727(a)(3) bars a debtor's discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]"

> The standard for denial of discharge under § 727(a)(3) was explained by the Court in *CM Temporary Services, Inc. v. Bailey (In re Bailey),* 375 B.R. 410 (Bankr. S.D. Ohio 2007):
>
>> Section 727(a)(3) has been interpreted to apply a shifting burden of proof. The Plaintiff must establish a prima facie case showing the Debtor failed to keep adequate records. *Grange Mut. Ins. Co. v. Benningfield (In re Benningfield),* 109 B.R. 291, 293 (Bankr. S.D. Ohio 1989). For purposes of § 727(a)(3), the Plaintiff is not entitled to perfect, or even necessarily complete, records. Instead, the Debtor must provide the Plaintiff 'with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.' *Turoczy Bonding Co. v. Strbac (In re Strbac),* 235 B.R. 880, 882 (6th Cir.BAP1999), *quoting Bay State Milling Co. v. Martin (In re Martin),* 141 B.R. 986, 995 (Bankr.N.D.Ill.1992).
>
> *In re Bailey,* 375 B.R, at 415.

*In re Slavik*, 426 B.R. 711, 719 (Bankr. E.D. Mich. 2010) *aff'd sub nom. Astro Bldg. Supplies, Inc. v. Slavik*, 433 B.R. 651 (E.D. Mich. 2010) *aff'd,* 443 F. App'x 993 (6th Cir. 2011).

The Plaintiff has failed, in its Complaint and in its Response to the Defendant's Motion for Summary Judgment, to specifically identify what the Defendant has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained. The Plaintiff failed to substantively respond to the Defendant's Motion for Summary Judgment with regard to this count and merely alleges that the Defendant was paid on most of the projects on which the Plaintiff provided materials and labor, but that the Plaintiff was not paid for its material and labor on some of those projects. That allegation is not enough to support a claim under Section 727(a)(3) and, therefore, the Defendant's Motion for Summary Judgment is granted with regard to that count.

   iii. <u>Section 727(a)(4)</u>

Section 727(a)(4)(A) provides an exception to the debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account." "The false oath that is a sufficient ground for denying a discharge may consist of (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings." 6 Collier on Bankruptcy ¶ 727.04[1][c] at 727-42 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010). In order to prevail under this section, a plaintiff must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case. *In re Keeney*, 227 F.3d 679, 685 (6th Cir. 2000).

The Plaintiff alleges that (1) the Defendant was paid on most of the projects on which the Plaintiff provided materials and labor; (2) the Plaintiff was not paid for its material and labor on some of those projects; and (3) the Defendant listed the Plaintiff as a creditor on his bankruptcy schedules. The Plaintiff argues that the Defendant cannot truthfully say that he was paid in full, yet he was unable to pay the Plaintiff the amounts due to it. The Plaintiff also argues that the Defendant cannot claim that he overpaid the Plaintiff for the costs of the material and labor it provided, but then list the Plaintiff as a creditor on his schedules.

The Defendant argues that the Plaintiff has failed to assert a sufficient legal or specific factual basis to support this count because (1) the Plaintiff has failed to prove that all of the jobs on which it provided materials and labor were profitable and that the Defendant must have made enough on those projects to pay the Plaintiff in full, and (2) the Plaintiff has failed to prove that Defendant's listing the Plaintiff as a creditor on the Defendant's bankruptcy petition was a false statement, rather than a choice to exercise an abundance of caution in listing all creditors on his schedules despite the fact that the debt allegedly owed remains in dispute.

The Plaintiff has failed, in its Complaint and in its Response to the Defendant's Motion for Summary Judgment, to specifically identify any false oath or account made by the Defendant. The allegations made by the Plaintiff in its Response to Defendant's Motion for Summary Judgment are not enough to support a claim under Section 727(a)(4) and, therefore, the Defendant's Motion for Summary Judgment is granted with regard to that count.

iv. Section 727(a)(5)

Section 727(a)(5) provides that the court shall grant the debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." The

purpose of this section was explained by the court in *Kovacs v. McVay (In re McVay)*, 363 B.R. 824 (Bankr. N.D. Ohio 2006):

> This section is derived from competing concerns: (1) the trustee and creditors' right to question the debtor about their financial affairs; and (2) the knowledge that debtors will not always be completely forthcoming with information about their financial activities. Section 727(a)(5) seeks to address these competing concerns by conditioning discharge on a debtor satisfactorily explaining any prepetition diminution or loss of asset. In order to achieve this, paragraph (a)(5) requires debtors to disclose all vital information; there is no requirement of mal-intent or scienter. In addition, it does not matter under § 727(a)(5) how the loss or deficiency occurred. For example, money spent on illegal activities does not run afoul of § 727(a)(5). Section 727(a)(5) is simply concerned with the adequacy of the debtor's explanation.

*Id.* at 830-831 (citations omitted).

To satisfy his initial burden of proof, the creditor must show two things: first, that the debtor had a cognizable ownership interest in a specific asset, and second, that the debtor's interest existed at a time not too far removed from when the petition was filed. *Id.* at 831. Once the creditor has met his burden, the debtor must satisfactorily explain the loss. The standard for a satisfactory explanation under Section 727(a)(5) "is one that is reasonable under the circumstances." *Id.* (quoting *Lacy Wholesale & Main Factors v. Bell (In re Bell)*, 156 B.R. 604, 605 (Bankr. E.D. Ark. 1993)). A reasonable explanation involves capacity for verification. The explanation should enable a trustee or creditor to investigate the circumstances of the loss. *Id.*

As noted, in its Response to the Defendant's Motion for Summary Judgment, the Plaintiff alleges that (1) the Defendant testified under oath at Intex's 341 Meeting of Creditors that Intex was paid in full on all of the projects on which the Plaintiff provided materials and labor, with the exception of two or three projects; and (2) the Defendant failed to pay the Plaintiff what he was owed; and (3) the Defendant listed the Plaintiff as a creditor on his bankruptcy schedules, indicating that he still indebted to the Plaintiff. The Plaintiff argues that, because the Defendant

was paid in full on almost all of its accounts, he should have been able to pay Plaintiff for at least the costs incurred on the joint projects. The Plaintiff also argues that the Defendant has inconsistently stated that he paid the Plaintiff in full for the cost of its materials and labor, but yet the Defendant listed the creditor on his schedules as a creditor to whom he owed money.

The Defendant argues that the Plaintiff has failed to allege any loss of assets.

The Court concludes that the Plaintiff has satisfactorily alleged a loss of assets and a failure on the part of the Defendant to account for such. However, there are remaining issues of material fact remaining regarding (1) the amounts the Defendant was paid on the specific projects on which the Plaintiff provided materials and labor; (2) whether the amounts paid provided enough to pay all subcontractors, including the Plaintiff, in full; (3) whether the Plaintiff was in fact paid in full for the materials and labor it provided; and (4) whether there is a satisfactory explanation for the a loss of assets if such actually occurred. Accordingly, the Defendant's Motion for Summary Judgment is denied with regard to that count.

## CONCLUSION

For the reasons set forth herein, (1) the Plaintiff's Motion for Summary Judgment is denied in its entirety; and (2) the Defendant's Motion for Summary Judgment is denied with regard to the Section 523(a)(2)(A), (a)(4), and (a)(6) counts and the Section 727(a)(5) count and is granted with regard to the Section 727(a)(2)(A), (a)(3), and (a)(4) counts. Accordingly, the Section 727(a)(2)(A), (a)(3), and (a)(4) counts (Counts IV, V, and VI) of the Plaintiff's Complaint are dismissed. Counsel for the Defendant shall prepare and present an appropriate order.

.

```
Signed on March 08, 2013
                                    /s/ Daniel S. Opperman
                                   Daniel S. Opperman
```

23